**No. 13-2302**

# In the
# United States Court of Appeals
## for the Seventh Circuit

KEVIN R. CARMODY,

*Plaintiff-Appellant,*

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Central District of Illinois, No. 2:12-cv-02249-MPM.
The Honorable **Michael P. McCluskey**, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT

MICHAEL JOHN TAGUE
FLYNN, PALMER, TAGUE, LYKE
  & JACOBSON
402 West Church
P.O. Box 1517
Champaign, Illinois 61824-1517
(312) 372-8338

*Attorney for Plaintiff-Appellant*
*Kevin R. Carmody*

 

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 13-2302

Short Caption: Kevin Richard Carmody v. Board of Trustees of the University of Illinois, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Kevin Richard Carmody, Plaintiff/Appellant, Individual

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Flynn, Palmer, Tague, Lyke & Jacobson

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Michael J. Tague      Date: June 20, 2013

Attorney's Printed Name: Michael J. Tague

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes  ☒  No ____

Address: 402 West Church Street, Champaign, IL 61820

Phone Number: 217-352-5181      Fax Number: 217-352-7964

E-Mail Address: fpt5law@aol.com

rev. 01/08 AK

## TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES.............................................................................................. iv

JURISDICTIONAL STATEMENT ......................................................................................1

STATEMENT OF THE ISSUES ..........................................................................................2

STATEMENT OF THE CASE..............................................................................................2

STATEMENT OF THE FACTS............................................................................................3

      The Inadequate Pre-Termination Procedure.................................................6

      The Deficient Post-Termination Procedure ................................................8

      Procedural History........................................................................................10

SUMMARY OF THE ARGUMENT.......................................................................................12

ARGUMENT......................................................................................................................13

     I.       STANDARD OF REVIEW ................................................................13

     II.     PLAINTIFF PRESENTS SUFFICIENT EVIDENCE TO RAISE A
             REASONABLE INFERENCE THAT THE PRE-TERMINATION
             PROCEDURE WAS INADEQUATE...............................................14

     III.    PLAINTIFF PRESENTS SUFFICIENT EVIDENCE TO RAISE A
             REASONABLE INFERENCE THAT THE POST-TERMINATION
             PROCEDURE WAS INADEQUATE...............................................21

     IV.    PLAINTIFF STATED A PLAUSIBLE CLAIM FOR VIOLATION OF THE
             ILLINOIS ETHICS ACT ...................................................................25

V.    IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED LEAVE
      TO AMEND ...........................................................................................................28

CONCLUSION ...........................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

*Argyropoulos v. City of Alton,*
    539 F.3d 724 (7th Cir. 2008) ...................................................................26

*Arnett v. Kennedy,*
    416 U.S. 134 (1974) ...............................................................................15

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ...........................................................................13

*Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205,*
    389 F.3d 685 (7th Cir. 2004) ......................................................... *passim*

*Bd. of Regents v. Roth,*
    408 U.S. 564 (1972) ...........................................................................14, 21

*Benjamin v. Ill. Dep't of Fin.,*
    688 F. Supp. 2d 796 (N.D. Ill. 2010) ......................................................26

*Biel v. Schultz,*
    1990 U.S. App. Lexis 9639 (7th Cir. June 13, 1990) ..............................20

*Boddie v. Connecticut,*
    401 U.S. 371 (1971) ...............................................................................21

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001) ...............................................................................27

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985) .....................................................................14, 21, 25

*Cliff v. Board of Sch. Comm'rs,*
    42 F.3d 403 (7th Cir. 1994) ....................................................................20

*Dubicz v. Commonwealth Edison Co.,*
    377 F.3d 787 (7th Cir. 2004) ..............................................................14, 28

*EEOC v. Yellow Freight Sys.,*
    253 F.3d 943 (7th Cir. 2001) ..................................................................27

*English v. Talladega County Bd. of Educ.*,
    938 F. Supp. 775 (D. Ala. 1996) ...................................................................23

*Fern v. Thorp Public School*,
    532 F.2d 1120 (7th Cir. 1976) ...................................................................19

*Flynn v. Sandahl*,
    58 F.3d 283 (7th Cir. 1995) .......................................................................20

*Gleason v. Mesirow Fin.*,
    118 F.3d 1134 (7th Cir. 1997) ...................................................................27

*Head v. Chicago Sch. Reform Bd. of Trustees*,
    225 F.3d 794 (7th Cir. 2000) .....................................................................17

*Johnson v. Denver Pub. Sch.*,
    2007 U.S. Dist. Lexis 79567 (D. Colo. 2007) ...........................................24

*Killingsworth v. HSBC Bank Nev., N.A.*,
    507 F.3d 614 (7th Cir. 2007) .....................................................................13

*Lang v. Ill. Dep't of Children & Family Servs.*,
    361 F.3d 416 (7th Cir. 2004) .....................................................................27

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ...................................................................................21

*Lujan v. G & G Fire Sprinklers*,
    532 U.S. 189 (2001) ...................................................................................21

*Lutter v. Rinella Bev. Co.*,
    2004 U.S. Dist. Lexis 1536 (N.D. Ill. Feb. 4, 2004) ...........................26, 27

*Michalowicz v. Vill. of Bedford Park*,
    528 F.3d 530 (7th Cir. 2008) .....................................................................23

*Miller v. County of Santa Cruz*,
    39 F.3d 1030 (9th Cir. 1994) .....................................................................24

*Moss v. Southern R. Co.,*
   1986 U.S. Dist. Lexis 23507 (N.D. Ga. June 27, 1986)...........................................................27

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950).............................................................................................................14

*Omosegbon v. Wells,*
   335 F.3d 668 (7th Cir. 2003) ...............................................................................................14

*Powell v. Mikulecky,*
   891 F.2d 1454 (10th Cir. 1989) ....................................................................................... 22-23

*Powers v. Richards,*
   No. 04-3024, 2006 U.S. Dist. Lexis 41266, 2006 WL 1749611 (C.D. Ill. June 20, 2006) .....23

*Powers v. Richards,*
   549 F.3d 505 (7th Cir. 2008) ...............................................................................................23

*Pugh v. City of Attica,*
   259 F.3d 619 (7th Cir. 2001) ...............................................................................................27

*Reger Dev., LLC v. Nat'l City Bank,*
   592 F.3d 759 (7th Cir. 2010) ...............................................................................................13

*Ross v. Kansas Com. on Civil Rights,*
   1985 U.S. Dist. Lexis 13957 (D. Kan. Nov. 13, 1985) ...........................................................27

*Ryan v. Illinois Dep't of Children & Family Servs.,*
   185 F.3d 751 (7th Cir. 1999) ...............................................................................................20

*Shirley v. Chrysler First, Inc.,*
   970 F.2d 39 (5th Cir. 1992) .................................................................................................27

*Sitar v. Ind. DOT,*
   344 F.3d 720 (7th Cir. 2003) ...............................................................................................26

*Staples v. City of Milwaukee,*
   142 F.3d 383 (7th Cir. 1998) ...............................................................................................19

*Stone v. City of Indianapolis Pub. Utils. Div.,*
   281 F.3d 640 (7th Cir. 2002) ................................................................26

*Tamayo v. Blagojevich,*
   526 F.3d 1074 (7th Cir. 2008) .............................................................13

*Turner v. The Saloon*, Ltd.,
   595 F.3d 679 (7th Cir. 2010) ...............................................................27

*United Transp. Union v. Gateway Western Ry. Co.,*
   78 F.3d 1208 (7th Cir. 1996) ...............................................................13

*Willer v. Las Vegas Valley Water Dist.,*
   1999 U.S. App. Lexis 7831 (9th Cir. 1999) .........................................24

*Wilson v. Seattle Hous. Auth.,*
   2010 U.S. Dist. Lexis 39763 (D. Wash. 2010) ....................................23

## Rules, Statutes and Other Authority:

5 ILCS 430/15-5 ......................................................................................25

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1294 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

## JURISDICTIONAL STATEMENT

Plaintiff Kevin Richard Carmody ("Carmody") filed his complaint against Defendants for violation of his constitutional right under the due process clause of the Fourteenth Amendment.  The complaint also includes a state law pendent claim for whistle blower protection.  The district court had jurisdiction under 28 U.S.C. § 1331 because Carmody's due process claim arose under the laws of the United States and had supplemental jurisdiction under 28 U.S.C. § 1367 over the pendant state-law claim.

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294 because this is an appeal from a final judgment of the federal district court for the Central District of Illinois (Urbana Division), entered on May 15, 2013, that fully disposed of Carmody's claims and terminated the case.  Carmody timely filed his notice of appeal on June 13, 2013.

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in granting Defendants' motion to dismiss
        Plaintiff's claim for denial of due process when Plaintiff presented
        sufficient evidence to raise a reasonable inference from which a trier of
        fact could conclude the pre and post-termination procedures were
        inadequate to provide Plaintiff with due process.

II.     Whether the district court erred in granting Defendants' motion to dismiss
        when Plaintiff presented sufficient evidence to raise a reasonable inference
        from which a trier of fact could conclude that the termination of Plaintiff
        by Defendants was retaliatory and in violation of the Illinois Ethics Act.

## STATEMENT OF THE CASE

This matter arises from a complaint filed by Carmody against the Board of

Trustees of the University of Illinois ("Board of Trustees"), his former employer, and

certain employees or agents of the employer for violation of his due process rights and

for violation of the Illinois Ethics Act.  Carmody filed this action before the district court

against, *inter alia*, Defendants Board of Trustees, Ilesanmi Adesida ("Adesida"),  Sharon

Reynolds ("Reynolds") and Michael Hogan ("Hogan") alleging a violation of the due

process clause of the Fourteenth Amendment and a state law pendent claim for whistle

blower protection as to Defendants Adesida, Hogan, the Board of Trustees and Jong

Shi-Pang ("Pang") for terminating his employment in retaliation for exposing the

2

"Popcorn Activity" of two university professors.  On May 15, 2013, the district court

entered a judgment granting Defendants' motion to dismiss the complaint.  Carmody

timely appealed.

## STATEMENT OF THE FACTS

Plaintiff Carmody was a long-time employee of the University of Illinois ("the

University") in the Department of Industrial Enterprise Systems Engineering as an

academic professional with the job title of Manager of Systems Services for 22 years out

of the 25 years total he was employed by the University.  (Doc. 1, ¶10, p. 3).  On May 21,

2007, Carmody reported to IESE Department Head Deborah Thurston ("Thurston") that

University professors Wildblood and Carnahan were using University resources for a

private business activity ("Popcorn Activity") (Doc.  1, ¶7, p. 13; Doc. 1-1, p. 52).

Carnahan is Thurston's husband.  (Doc. 1, ¶7, p. 13).  Carmody brought the activity to

the attention of the State of Illinois Office of Executive Inspector General.  (Doc. 1, ¶7, p.

13).

In 2009, Carmody commenced a lawsuit ("the Goldberg litigation") against

University tenured professor David Goldberg ("Goldberg").  (Doc. 1, ¶11, p. 3).

Throughout the Goldberg litigation, the University supported Goldberg by providing

him with legal counsel.  (Doc. 10, p. 3).  During the pendency of the Goldberg litigation,

Carmody received unsolicited e-mails in his home Champaign News-Gazette box.

(Doc. 1, ¶12, p. 3).  The e-mails, which were relevant to the Goldberg litigation, were

3

either to/and or from University employee Thurston.  (Doc. 1, ¶12, p. 3).  Thurston

previously provided an affidavit in the Goldberg litigation, and the affidavit was

inconsistent with the contents of the e-mails ("Thurston e-mails").  (Doc. 1, ¶12, p. 3).

The Thurston e-mails created a quandary for the University and Thurston because they

painted Goldberg in a negative light.  (Doc. 10, p. 3).  Carmody delivered the e-mails to

his attorneys representing him in the Goldberg litigation.  (Doc. 1, ¶13, p. 3).  The

attorneys filed a motion and included the Thurston e-mails as Group Exhibit A.  (Doc. 1,

¶14, p.3).  Carmody's attorneys were aware that Goldberg's attorneys would provide

copies of the motion to University counsel who would then advise Thurston to take

appropriate action.  (Doc. 1, ¶15, p. 4).

The judge in the Goldberg litigation placed the Thurston e-mails under seal and

stated that "the Court is further going to enter a protective order on the parties that

there is to be no secondary dissemination of any of the contents of Group Exhibit A as

the court has described them, beyond the respective litigation files of the three lawyers

here."  (Doc. 1, ¶16, p. 4).  Despite, the judge's order, either Thurston, her attorney or

Goldberg's attorney provided the agents, employees or representatives of the

University with a copy of the Thurston e-mails.  (Doc. 1, ¶17, p. 4).  The University and

University employees utilized the e-mails as a basis to reassign Carmody and to

commence an investigation to terminate his 25 years of employment.  (Doc. 1, ¶¶18-19,

p. 4; Doc. 10, p. 3).

4

On July 1, 2010, the University reassigned Carmody from reporting to IESE Department Head and Defendant Pang to Assistant Dean Charles Thompson. (Doc. 1, ¶18, p. 4; Doc. 1, ¶8, p. 13). On July 19, 2010, Defendant Adesida notified Carmody that he was being investigated in relation to the Thurston e-mails and that he violated the University code of conduct and policy on appropriate use of computers and network systems. (Doc. 1, ¶19, p. 4; Doc. 1-1, p. 2-3). The University policy does not prohibit Carmody from receiving e-mails or documents from an anonymous source and submitting the documents to his attorney on a related pending litigation. (Doc. 1, ¶20, p. 5; Doc. 1-1, p. 2-3).

The parties held a meeting on July 28, 2010 where Defendants intended to question Carmody about the contents of the Thurston e-mails. (Doc. 1, ¶21, p. 5; Doc. 1-1, p. 4). Carmody's attorney, Robert G. Kirchner ("Kirchner") advised the University's counsel and Defendants Joseph Bohn ("Bohn") and Sharon Reynolds ("Reynolds") that in light of the court's order, he would not allow Carmody to answer questions as to the contents and substance of the e-mails, which would be a clear violation of the court's order. (Doc. 1, ¶21, p. 5; Doc. 1-1, p. 4). The University counsel claimed that the e-mails were University property, and the University intended to proceed with the investigation concerning the documents. (Doc. 1, ¶22, p. 5; Doc. 1-1, p. 5). Kirchner took the proper measures to modify or vacate the court's order sealing the e-mails, but that did not happen until September 23, 2010. (Doc. 1, ¶23, p. 5).

5

**The Inadequate Pre-Termination Procedure**

On September 7, 2010, while the University and Defendants Reynolds, Bohn and Deborah Stone ("Stone") were aware of the steps being taken to modify the court's order, they submitted findings and recommendations on Carmody's alleged violation of University policy.  (Doc. 1, ¶24, p. 6; Doc. 1-1, pp. 6-9).   The findings and recommendations had a new charge of breach of security and duty owed by Carmody when he received the e-mails through an anonymous source.  (Doc. 1-1, pp. 6-9).  Carmody was never given an opportunity to respond to the allegations.  (Doc. 1, ¶25 p. 6; Doc. 1-1, p. 10).

On September 23, 2010, the University terminated Carmody's employment, based on its September 7, 2010 findings and recommendations and again without providing Carmody with the opportunity to answer.   (Doc. 1, ¶26 p. 6; Doc. 1-1, pp. 12-13).  The decision to terminate Carmody was made prior to the September 7, 2010 correspondence, as a result of the pending Goldberg litigation and the reporting of the "Popcorn Activity".  (Doc. 1-1, p. 10).  On September 30, 2010, Carmody informed the University of his intention to appeal the decision to terminate him.  (Doc. 1, ¶28, p. 6; Doc. 1-1, pp. 22-23).  Defendant Elyne Cole ("Cole") extended the filing deadline and provided Carmody and Kirchner with a proposed "Carmody Post-Termination Appeal Procedures."  (Doc. 1, ¶29 p. 6; Doc. 1-1 pp. 24-25).  On October 12, 2010 Kirchner submitted Carmody's appeal to the University.  (Doc. 1, ¶30, p. 7; Doc. 1-1, pp. 26-28).

In the appeal, he indicated the procedural inadequacies with the termination.  (Doc. 1-1, pp. 26-28).  He pointed out that Carmody was not afforded a pre-termination hearing.  (Doc. 1-1, p. 26).   Kirchner noted that the post-termination procedures imposed by the University were "inadequate, vague, ambiguous, and legally insufficient" to provide Carmody with due process consistent with his constitutional rights.  (Doc. 1-1, p. 26).  Kirchner also laid out the procedural deficiencies.   (Doc. 1-1, pp. 26-28).

On October 21, 2010, Defendant Cole selected Hearing Officer LeRoy Michael LeRoy ("Hearing Officer LeRoy") to serve as a hearing Officer for the appeal.  (Doc. 1, ¶ 31; Doc 1-1, pp. 29-31).  While Cole directed Hearing Officer LeRoy to ensure that the "process is fair and consistent with constitutional due process principles," the University provided Hearing Officer LeRoy with its own guidelines, which are procedurally inadequate, rather than providing the procedural protections delineated in Kirchner's request.   (Doc. 1 ¶32, p. 7; Doc. 1-1, p. 29; Doc. 1-1, p. 25; Doc. 1-1, pp. 26-28).  Notwithstanding the University's claims to provide a hearing consistent with Carmody's constitutional due process rights, in a letter to Kirchner, dated October 25, 2010, the University and employees demonstrated their intention of depriving Carmody of his rights to due process during the hearing.  (Doc. 1, ¶33, p. 7; Doc. 1-1, pp. 32-34).  In the letter, the University noted it would prevent tapings of the hearing, and it would prevent Carmody from confronting the witnesses face to face, among other things.  (Doc. 1-1, p. 33).

7

**The Deficient Post-Termination Procedure**

The post-termination hearing was held between November 5, 2010 and July 11, 2011 before Hearing Officer LeRoy.  (Doc. 1, ¶34; Doc. 1-1, pp. 35-47).  During the hearing, Officer LeRoy denied Carmody his due process rights.  (Doc. 1, ¶35).  He prevented Carmody from having a court reporter present to transcribe the hearing, at Carmody's expense.  (Doc. 1, ¶35).  Hearing Officer LeRoy denied Carmody's motion to exclude the University's witnesses from the hearing process in order to prevent potential witnesses from comparing their testimonies that may have been inconsistent. (Doc. 1, ¶36).  Hearing Officer LeRoy further denied Carmody's request that the University produce certain records and provide Carmody with access to examine the computers to respond to the report of University employee Chuck Thompson.  (Doc. 1, ¶35; Doc. 1-1, pp. 49-50).

There was a previous agreement between the parties that the University would produce professors Pang and Goldberg and Dean Adesida as material witnesses for the hearing.  (Doc. 1, ¶39).  However, the University failed to produce these witnesses during the hearing, and Officer LeRoy took no steps to compel the attendance of the witnesses.  (Doc. 1, ¶39).  Furthermore, the procedures provided by the University and utilized for the hearing failed to give Hearing Officer LeRoy the authority to compel the witnesses to testify.  (Doc. 1, ¶39).  During the November 18, 2010 hearing, Officer LeRoy rightly expressed the legitimate concern that "the hearing procedures are

8

vague." (Doc. 1, ¶38). After adjournment of the December 16, 2010 hearing, Hearing Officer LeRoy engaged in an altercation with one of Carmody's attorneys in which Hearing Officer LeRoy inappropriately asked the attorney he if intended to sue him. (Doc. 1, ¶40). Neither Officer LeRoy nor Defendants believed that such improper comment should have resulted in the recusal of Officer LeRoy. (Doc. 1, ¶40).

On April 17, 2011, Kirchner, Carmody's chief attorney and the only attorney who attended all of the hearings on Carmody's behalf, passed away. (Doc. 1, ¶41). Carmody's ability to obtain new counsel or attend the hearing *pro se* was irreparably damaged by the University's decision to deny him the right to have a transcript and record of the proceedings. (Doc. 1, ¶42). On July 5, 2011, the University submitted a written summation, even though Carmody had not retained new counsel and the "Carmody Post-Termination Appeal Procedures" previously provided to Carmody provided for no such procedure. (Doc. 1, ¶43; Doc. 1-1, pp. 24-25). Hearing Officer LeRoy considered the document, despite Carmody's objections. (Doc. 1, ¶43).

The appointment letter directed Hearing Officer LeRoy to conduct the proceeding in a manner to "ensure the process is fair and consistent with constitutional due process and principles." (Doc. 1, ¶43; Doc. 1-1, p. 29). However, in his report, Officer LeRoy stated he was not authorized to conduct the proceedings in such a manner or to resolve due process issues. (Doc. 1, ¶ 44; Doc. 1-1, p. 45). In the report, Officer LeRoy concluded that the University presented circumstantial evidence that

9

Carmody breached a computer system, but the evidence was "not clearly convincing."

(Doc. 1, ¶45; Doc. 1-1, p. 45).  The University did not present direct evidence to support

this allegation.  (Doc. 1, ¶45; Doc. 1-1, p. 45).  The entire post-termination hearing was

structured in a way to prevent an impartial judicial review of the record.  (Doc. 1, ¶51).

The recommendation and decision following the post-termination hearing were replete

with errors, as a result of the inadequate procedures.  (Doc. 1, ¶52).  On August 30, 2011,

Defendant Cole, affirmed the original dismissal.  (Doc. 1, ¶53; Doc. 1-1, p. 51).

**Procedural History**

Carmody commenced the instant action alleging that the Board of Trustees and

the University employees violated his 14th Amendment due process rights.  (Doc. 1,

¶¶1-54, pp. 1-12).  Carmody asserted that he was deprived of a valuable property

interest without due process.  (Doc. 1, ¶¶1-54, pp. 1-12).   The complaint also included a

second cause of action for state law pendent claim under the Illinois Whistle Blower

Protection Act.  (Doc. 1, ¶¶1-12, pp. 12-15).  Carmody alleged that the decision of the

Defendants to reassign him and to commence the initial investigation into the

termination of his employment was motivated in retaliation for reporting the "Popcorn

Activity."  (Doc. 1, ¶¶1-12, pp. 12-15).   Defendants moved to dismiss the complaint.

(Doc. 7, pp. 1-3; Doc. 8, pp. 1-17).  They argued, *inter alia*, that the Board of Trustees is

immune from suit, that the first count of the complaint is insufficient to state a claim for

due process violation and that the second count fails to state a cause of action.  (Doc. 7, pp. 1-3; Doc. 8, pp. 1-17).

The district court granted the motion to dismiss.  (Doc. 11, p. 25).  The district court noted that Defendants did not contest whether Carmody's complaint sufficiently pleaded a deprivation of a protected property or liberty interest.  (Doc. 11, p. 15).  With regard to the issue of whether Carmody was deprived of a protected interest without due process, the district court held that the pre-termination proceeding was adequate. (Doc. 11, pp. 15-16).  The district court stated that Carmody's voluntary decision not to participate at the meeting held during the pre-termination proceeding does not show that the pre-termination proceeding was inadequate.  (Doc. 11, p. 17).  The district court further held that any deficiencies during the pre-termination hearing are not valid grounds for a due process claim because a full post-termination hearing was available to Carmody.  (Doc. 11, pp. 17-18).

In deciding whether Defendants violated the due process clause by not granting Carmody the opportunity to present his case during the post-termination hearing, the district court erroneously concluded that the allegations in the complaint with respect to the post-termination proceeding cannot survive a motion to dismiss because the deficiencies raised by Carmody are not constitutionally required in a termination proceeding for a public employee.  (Doc. 11, p. 19).  The district court also held that additional procedures were not constitutionally required for the post-termination

hearing to comport with due process.  (Doc. 11, p. 20).  The district court erroneously

dismissed count I of the complaint on the basis that Carmody did not adequately plead

a violation of due process.  (Doc. 11, p. 22).

The district court dismissed Carmody's Ethics Act Claim on the conclusion that it

is unlikely that Defendants would wait three years after Carmody reported the

"Popcorn Activity" to terminate him.  (Doc. 11, pp.  23-24).  The district court solely

considered the time frame from which Carmody reported the "Popcorn Activity" to

when he was terminated in retaliation.  (Doc. 11, pp. 23-24).  The district court entered a

judgment dismissing the case.  (Doc. 12).  Carmody timely appealed the judgment.

(Doc. 13).  For the reasons stated below, the judgment appealed from should be

reversed and Carmody's complaint should be reinstated.

## SUMMARY OF THE ARGUMENT

Defendants' motion to dismiss should have been denied because, viewing the

allegations in a light most favorable to Carmody, accepting the allegations as true, and

giving Carmody the benefit of all favorable inferences, he has sufficiently stated claims

against the Defendants.  Carmody has alleged sufficient facts that a reasonable fact

finder could conclude that, based on the deficiencies in the pre and post-termination

hearings, he was denied due process under the Fourteenth Amendment.  Carmody also

alleged sufficient facts that a reasonable fact finder could conclude that Defendants

Adesida, Hogan, Pang and the Board of Trustees reassigned him and commenced an

12

investigation to terminate his employment in retaliation for Carmody reporting the private business activity of two professors at the University of Illinois. At a minimum, Carmody should be given leave to amend to address any perceived defects in the complaint.

## ARGUMENT

### I.     STANDARD OF REVIEW.

This Court reviews the district court's grant of a motion to dismiss *de novo*. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). This Court construes the complaint in a light most favorable to the plaintiff, and accepts all well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *Id.*; *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208 (7th Cir. 1996).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). This Court has held post-*Iqbal* that, to defeat a motion to dismiss, a plaintiff must provide "only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763-764 (7th Cir. 2010), *quoting Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008).

Leave to amend is freely granted, and a plaintiff should be permitted to amend

his complaint absent prejudice, undue delay, bad faith, dilatory motive, or futility.

*Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).  It is an abuse of

discretion to deny amendment where none of these factors are present.  *Id.* at *792-793.*

## II.     PLAINTIFF PRESENTS SUFFICIENT EVIDENCE TO RAISE A REASONABLE INFERENCE THAT THE PRE-TERMINATION PROCEDURE WAS INADEQUATE.

An essential principle of due process is that an individual cannot be deprived of

a protected property interest without notice and opportunity to be heard.  *Cleveland Bd.*

*of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), *citing Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306 (1950).  "The opportunity to present reasons, either in person or

in writing, why proposed action should not be taken is a <u>fundamental due process</u>

<u>requirement</u>."  *Loudermill* at 546 (emphasis added).  Before depriving an individual of

any significant property interest, some type of hearing is paramount.  *Loudermill* at 542;

*Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972).  To maintain a due process claim, a

plaintiff must show that she suffered a deprivation of a cognizable property or liberty

interest and that the deprivation occurred without due process.  *Omosegbon v. Wells*, 335

F.3d 668 (7th Cir. 2003).

In *Loudermill*, two civil servants were terminated without a pre-termination

hearing to respond to the charges against them.  *Id.* at 535-538.  The majority in The

Supreme Court determined that they were entitled to a pre-termination opportunity to

14

respond to the charges, although it may not be a full evidentiary hearing (stating that "pre-termination hearing though necessary, need not be elaborate"). *Id.* at 545. The pre-termination hearing does not necessarily have to resolve the issues bringing about the discharge. *Id.* at 545. Essentially, it is a tool to determine whether there are reasonable grounds to support the charge and the propose action. *Id.* at 546. Justice Marshall concurred in part and concluded because a decision was made to terminate the employees' wages, they were entitled to "test the strength of the evidence 'by confronting and cross-examining adverse witnesses and by presenting witnesses on his behalf, wherever there are substantial disputes in testimonial evidence.'" *Id.* at 548, *citing Arnett v. Kennedy*, 416 U.S. 134 (1974) (Mashall, J. dissenting).

The allegations in the complaint and even a close review of the disputed findings in Defendants' motion to dismiss demonstrate that Carmody was not provided with an adequate pre-termination hearing. (Doc. 1, ¶¶ 20-26, pp. 5-6; Doc. 8, pp. 9-11). After Carmody received the Thurston e-mails from an anonymous source and had his attorney file them in the pending Goldberg litigation, Defendants concocted a scheme to terminate Carmody's employment since the e-mails presented the University and/or Thurston and Goldberg in a negative light. The timeline of the events leading to Carmody's termination, without a pre-termination hearing are as follows:

• On July 19, 2010, the University provided a written notification to Carmody

that he was being investigated in relation to the Thurston e-mails for violating

15

the University code of conduct and policy on appropriate use of computer and network systems.  (Doc. 1, ¶¶19-20, pp. 4-5; Doc. 1-1, p. 2).

• On July 28, 2010, Carmody participated in a meeting with the University's counsel where Defendants Bohn and Reynolds informed Carmody that they possessed the e-mails, which were ordered to be sealed by the judge in the Goldberg litigation and that they intended to question Carmody about the contents and substance of the e-mails.  (Doc.  1, ¶21, p. 5; Doc. 1-1, p. 4). Kirchner, Carmody's attorney, advised Carmody not to violate the court's order by discussing the contents of the e-mails.   (Doc.  1, ¶ 21, p. 5; Doc. 1-1, p. 4).  The parties adjourned the meeting with the agreement that Kirchner would send a letter to the University's counsel — which he did — and await her reply before seeking direction from the judge in the Goldberg litigation.  (Doc.  1, ¶21, p. 5; Doc. 1-1, p. 4).

• On August 11, 2010, the University's counsel sent a letter to Kirchner where she misinterpreted the judge's sealing order and decided to continue the investigation without further cooperation from Carmody or his attorney or without direction from the court.  (Doc. 1-1, p. 5).

• On September 7, 2010, while Kirchner was seeking to modify the court's sealing order, Defendants Bohn, Reynolds and Deborah Stone issued findings and recommendations on the basis that <u>a new charge</u> of breach of security and

duty owed by Carmody when he received the Thurston e-mails would be added as a basis for termination.  (Doc. 1, ¶24, p. 6; Doc. 1-1, pp. 6-9).

• On September 9, 2010, Carmody replied that the allegations in the September 7, 2010 findings and recommendations as to the new charge are based on false information and false premises.  (Doc. 1-1, p. 10).  He requested the opportunity to respond to the false information.   (Doc. 1-1, p. 10).

• On September 23, 2010, the University advised Carmody that his employment was terminated, based upon Defendants Bohn, Reynolds and Stone issuing the false findings and recommendations.

Here, reasonable inferences from the allegations in the complaint show that Carmody was not provided with adequate pre-termination procedure, especially with respect to the new charge of merely possessing the e-mails.  The district court's sole basis for finding that Carmody was provided with adequate pre-termination procedure is based on Carmody's inability to discuss the contents of the e-mails, in compliance with the court's sealing order.  An employer who terminates an employee's employment in which the employee has a constitutionally protected interest must provide certain pre-termination procedures, which at minimum, must include the opportunity for the employee to provide his side of the story.  *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794 (7th Cir. 2000).

17

In *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 688

(7th Cir. 2004), the Board of Education conducted an "on-the-sly investigation" on

plaintiff Baird, school superintendent and principal, to terminate his contract. The

Board presented Baird with his performance evaluation and a letter notifying him that

it was terminating his employment. *Id.* at 688-689. The Board also advised Baird of a

hearing to take place. *Id.* at 689. Baird contacted his attorney who promptly requested

a continuance and the names of the individuals who provided information included in

Baird's performance evaluation as well as the recusal of certain "biased" Board

members who led the investigation against Baird. *Id.* The Board denied the requests

and noted that it would not call witnesses at the pre-termination hearing. *Id.* Baird's

attorney objected to the hearing procedures as unfair. *Id.* On the day of the pre-

termination hearing, Baird appeared with his attorney to protest the contractual and

due process violations and he departed. *Id.* The Board convened without Baird and

terminated him. *Id.*

Baird commenced suit alleging that the Board's termination procedures violated

his right to procedural due process. *Id.* This Court held that the Board's procedures

were unfair and that the pre-termination procedures would satisfy due process only if

Baird received full due process after he was terminated. *Id.* at 690. This Court noted its

precedents that where an employee is given a full and adequate post-termination

hearing, due process does not require the employer to provide "full 'trial-type rights'

18

such as the right to present or cross-examine witnesses at the pre-termination hearing." *Id.* at 691, *citing Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998). This Court held that Baird was entitled to a pre-termination hearing that fully complied with due process, and the Board deprived him of this right. *Id.* at 693. While the Board provided Baird with the opportunity to call and question witnesses, it refused to provide the names of the employees who acted as undercover informants. *Id.* Due to the restrictions imposed on the pre-termination hearing, "what the Board gave to Baird with the left hand, it seemed to take away with the right, leaving Baird with a pre-termination hearing that may have satisfied a bare-bones *Loudermill* standard, but little else." *Id.*

This Court further held that Baird did not waive his right to contest the adequacy of the pre-termination hearing on due process grounds when he departed the hearing. *Id.* at 694. This Court has previously held that terminated employees who do not avail themselves of pre-termination hearings waive the right to contest the procedural adequacy of the hearing. *Fern v. Thorp Public School*, 532 F.2d 1120 (7th Cir. 1976). But in *Baird*, this Court held that since Baird did not participate in the discussion of the merits held at the hearing and he requested that the Board comport with the procedures of due process, he did not waive his right to contest the adequacy of the pre-termination hearing. *Id.* at 695.

19

Similar to *Baird*, the pre-termination procedure here was inadequate. Carmody's participation in the procedure was limited by the court's sealing order which prevented him from discussing the contents of the Thurston e-mails. Thus, he was not silent during the procedure since he requested additional time to respond to the new findings and conclusions, which was denied by the Defendants. Furthermore, like *Baird*, Carmody did not waive his objections to the inadequate procedure. It is well established by this Court that an employee waives the right to object to a pre-termination hearing only when the employer offers a pre-termination hearing and the employee fails to accept the offer by failing to appear. *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 761 (7th Cir. 1999); *Cliff v. Board of Sch. Comm'rs*, 42 F.3d 403, 414 (7th Cir. 1994); *see Flynn v. Sandahl*, 58 F.3d 283 (7th Cir. 1995). The district court made findings of facts that are disputed, and it failed to view the facts in a light most favorable to Carmody. The district court determined that Carmody's voluntary decision not to participate in the June 28, 2010 disciplinary meeting does not show that the pre-termination proceeding was inadequate. (Doc. 11, p. 19). Contrary to the district court's finding, the attachment to the complaint clearly demonstrates that the disciplinary meeting was held on July 28, 2010, not June 28, 2010 as stated in the district court's order. (Doc. 1-1, p. 4). *Biel v. Schultz*, 1990 U.S. App. Lexis 9639 (7th Cir. June 13, 1990) (stating that the district court is supposed to consider the attachments to the

20

pleadings).  Similar to the employee in *Baird*, Carmody attended the meeting but was

prevented from discussing the documents, per the court's sealing order.

The Supreme Court has recognized the severity of depriving a person the means

of livelihood through employment.  *Loudermill* at 543.  As such, the opportunity for an

employee to present his case is of great value in reaching a decision not tainted by flaw

or misapplication of the facts.  *Id.*  Though the format and procedural requirements of a

pre-termination hearing varies, *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971), the facts,

viewed in a light most favorable to Carmody demonstrate that he was denied the

opportunity to answer the charges at the pre-termination stage.

## III.  PLAINTIFF PRESENTS SUFFICIENT EVIDENCE TO RAISE A REASONABLE INFERENCE THAT THE POST-TERMINATION PROCEDURE WAS INADEQUATE.

An individual such as Carmody, who has a property interest in a benefit, has a

"constitutional right to a hearing to provide an opportunity to vindicate his claims.  *Bd.*

*of Regents v. Roth*, 408 U.S. 564, 577 (U.S. 1972).  "The due process clause grants the

aggrieved party the opportunity to present his case and have its merits fairly judged."

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982); *Lujan v. G & G Fire Sprinklers*,

532 U.S. 189 (2001).  Due process does not give public employees the right to confront

or cross-examine witnesses at a pre-termination hearing where a post-termination

hearing will adequately meet the procedural requirements.  *Staples v. City of Milwaukee*,

142 F.3d 383 (7th Cir. 1998).

In the complaint Carmody sufficiently alleged that he was not provided with an

adequate post-termination proceeding.  Upon Carmody's notice of intention to appeal

the decision to terminate his employment, Defendant Cole provided Carmody with a proposed "Carmody Post-Termination Appeal Procedures" which raised serious procedural inadequacies. (Doc. 1, ¶¶ 29-30, pp. 6-7, Doc. 1-1, pp. 24-25). Carmody brought the deficiencies to Cole's attention and stated that they were "inadequate, vague, ambiguous, and legally insufficient" to provide him with a fair opportunity to be heard consistent with the due process clause. (Doc. 1, ¶ 30, p. 7, Doc. 1-1, pp. 26-28). Cole then selected Hearing Officer LeRoy to preside over the post-termination proceeding. (Doc. 1-1, pp. 29-31). In selecting Hearing Officer LeRoy, Cole requested that LeRoy's "guiding principle should be to ensure the process is fair and consistent with constitutional due process principles." (Doc. 1-1, p. 29). Contrary to this request, Cole provided Hearing Officer LeRoy with the same deficient "Carmody Post-Termination Appeal Procedures" rather than the procedural protection delineated in the guidelines proposed by Kirchner, which comport with the due process requirements. (Doc. 1, ¶32, p. 7; Doc. 1-1, pp. 26-28). To the detriment of Carmody, Defendants further persisted in denying Carmody's request to record the proceedings, at his expense and to confront the witnesses. (Doc. 1-1, pp. 32-33).

The district court held that the lack of these procedural protections did not render the post-termination hearing inadequate. This is reversible error. Since the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. *Powell v. Mikulecky*, 891 F.2d

1454, 1458 (10th Cir. 1989). Post-termination remedies should be characterized by

promptness and an ability to return the plaintiff to his rightful position. *Baird v. Bd. of*

*Educ. for Warren Cmty. Unit Sch. Dist. No. 205, supra*, 389 F.3d at 692. The procedural

safeguards offered at a post-termination hearing may include representation by

counsel, pre-hearing discovery, the ability to challenge evidence and cross-examine

witnesses, and the ability to present evidence and witnesses. *Powers v. Richards*, No. 04-

3024, 2006 U.S. Dist. Lexis 41266, 2006 WL 1749611, at *5 (C.D. Ill. June 20, 2006);

*Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 533 (7th Cir. 2008) (plaintiff presented

evidence and cross-examined the witnesses against him).

      Contrary to the district court's narrow analysis of post-termination proceedings,

transcripts or recordings have been allowed during post-termination proceedings to

secure the right of due process. *English v. Talladega County Bd. of Educ.*, 938 F. Supp. 775,

n. 2 (D. Ala. 1996) (plaintiff's post-termination hearing transcript was attached as an

exhibit to defendants' motion for summary judgment on plaintiff's claims, including

allegations of violation of plaintiff's substantive and procedural due process).

Discovery has also been allowed in post-termination proceedings. *Powers v. Richards*,

549 F.3d 505, 509 (7th Cir. 2008) (plaintiff was represented by counsel and had the

opportunity to conduct discovery, present evidence, and cross-examine witnesses

against him). In *Wilson v. Seattle Hous. Auth.*, 2010 U.S. Dist. Lexis 39763 (D. Wash.

2010), the plaintiff raised the issue of whether "due process (in the form of a pre- and

post-termination hearing) may also require (1) a written record of the proceedings, (2) the right to demand proof which conforms to the rules of evidence, (3) hearing officers versed in all areas of federal law and evidence, (4) the right to explore all legal defenses at the informal hearing, and/or (5) the right to notification of post-hearing review." The defendant asserted that some of these elements, including the right to a transcript are not necessary. *Id.* at 12. While the court determined that these "contentions raise arguments on the merits that will await another day for resolution," it held that plaintiffs raised an argument that "could plausibly entitle them to relief on due process grounds." *Id.*

Moreover, some post-termination proceedings have been allowed to resemble a judicial proceeding, where the parties are represented by counsel and the "opportunity to present testimonial and documentary evidence." *Willer v. Las Vegas Valley Water Dist.*, 1999 U.S. App. Lexis 7831 (9th Cir. 1999) (there the plaintiff had a 3,700 page record of the post-termination proceeding); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) (at the evidentiary hearing, plaintiff was "permitted to present oral and documentary evidence and to call witnesses); *Johnson v. Denver Pub. Sch.*, 2007 U.S. Dist. Lexis 79567 (D. Colo. 2007) (plaintiff had a record of the post-termination hearing, which was part of her complaint).

Given that Carmody was not afforded the opportunity to respond to the claims at a pre-termination hearing, a full blown adversarial post-termination hearing was

24

necessary to determine the ultimate ground of the termination. *See Loudermill* at 545.
The allegations plead in the complaint as to the lack of procedural safeguards during
the post-termination proceeding create a reasonable inference that Carmody's due
process rights were violated.

## IV.    PLAINTIFF STATED A PLAUSIBLE CLAIM FOR VIOLATION OF THE ILLINOIS ETHICS ACT.

Section 15 of the Ethics Act prevents a state employee or state agency from taking
retaliatory action against a state employee because the employee

> Discloses or threatens to disclose to a supervisor or to a public body an activity,
> policy, or practice of any officer, member, State agency, or other State employee
> that the State employee reasonably believes is in violation of a law, rule, or
> regulation. (2) Provides information or testifies before any public body
> conducting an investigation, hearing, or inquiry into any violation of law, rule, or
> regulation by any officer, member, State agency, or other State employee. (3)
> Assists or participates in a proceeding to enforce the provisions of this Act.

5 ILCS 430/15-5.

In ruling on Carmody's cause of action under the Ethics Claim Act, the district
court based its analysis on the proximity of Carmody's protected activity and the
unlawful actions of Defendants. Defendants argued, and the District court adopted
their flawed argument, that in a retaliatory action, an inference of causal connection is
established by the temporal proximity of the adverse employment action to the
protected activity. Thus, according to the Defendants and the district court, Defendants
could not have possibly terminated Carmody in retaliation for the protected activity

25

because the three-year time span between the two actions does not create an inference of a causal link. The district court cites to cases where this Court held that the adverse employment action must be in close proximity to the protected conduct. However, this Court and other courts have also held otherwise. While "timing may be probative of motive under Illinois retaliatory discharge law, the timing of the discharge standing alone is not enough." *Lutter v. Rinella Bev. Co.*, 2004 U.S. Dist. Lexis 1536 (N.D. Ill. Feb. 4, 2004). This Court has "never said that temporal proximity is dispositive in providing or disproving a causal link." *Sitar v. Ind. DOT*, 344 F.3d 720 (7th Cir. 2003) (stating that "a trier of fact could find that the causal relationship existed from much more" than temporal proximity). This Court has also held that temporal proximity "will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Carmody is not required to show that the timing of his termination is "close on the heels" of the reporting of the private business activity, because there is no uniformity as to how many weeks, months or years constitute "close on the heels" of the protected activity. As such, the district court's interpretation of *Benjamin v. Ill. Dep't of Fin.*, 688 F. Supp. 2d 796 (N.D. Ill. 2010) viewed through the "close on the heels" analysis is erroneous. Evidence of temporal relation alone is insufficient whether the timing is through a shorter (*Argyropoulos v. City of Alton*, 539 F.3d 724 (7th Cir. 2008) (a seven-week interval period between plaintiff's sexual harassment complaint and her

termination does not create an inference of retaliatory intent); (*Turner v. The Saloon*, Ltd., 595 F.3d 679 (7th Cir. 2010) (two months is insufficient) or longer period (*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (twenty-two months is too long to create an inference of retaliatory intent); (*EEOC v. Yellow Freight Sys.*, 253 F.3d 943 (7th Cir. 2001) (six weeks is too long); *Pugh v. City of Attica*, 259 F.3d 619, 630 (7th Cir. 2001); *Gleason v. Mesirow Fin.*, 118 F.3d 1134 (7th Cir. 1997).  Evidence, other than close temporal proximity may support the inference of a causal link.  *See Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416 (7th Cir. 2004).

Even if this Court adopts the "close on the heels" or proximal analysis, Carmody's retaliatory claim under the Illinois Ethics Claim Act should stand. Retaliation claims brought after long periods of time have been upheld by the courts. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992); *Ross v. Kansas Com. on Civil Rights*, 1985 U.S. Dist. Lexis 13957 (D. Kan. Nov. 13, 1985); *Moss v. Southern R. Co.*, 1986 U.S. Dist. Lexis 23507 (N.D. Ga. June 27, 1986).

The crux of Carmody's retaliation claim is not based on the temporal proximity of the protected activity and the adverse employment relation, but on the motive of Defendants in terminating his employment after he reported the "Popcorn Activity."  In determining the causation element in a retaliation claim the ultimate issue to be decided is the employer's motive in discharging the employee.  *Lutter v. Rinella Bev. Co.*, 2004 U.S. Dist. Lexis 1536 (N.D. Ill. Feb. 4, 2004).  The district court should not have analyzed

27

the retaliatory claims solely under the proximity theory.  Therefore, the judgment

dismissing the Ethics Act claim should be reversed and Carmody's complaint should be

reinstated.

## V.    IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

Leave to amend is freely granted, and a plaintiff should be permitted to amend

his complaint absent prejudice, undue delay, bad faith, dilatory motive, or futility.

*Dubicz*, 377 F.3d at 792.  It is an abuse of discretion to deny amendment where none of

these factors are present.  *Id.* at 792-793.

Here, as demonstrated above, Carmody has stated claims against Defendants for

the violation of due process and for violating the Illinois Ethics Act.  If this Court

determines that the complaint in its current form is inadequate to withstand a motion to

dismiss, then leave to amend should be granted to address any perceived defects in the

complaint.  Amendment would not be futile because Carmody has demonstrated the

ability to allege additional facts, if necessary, to correct any perceived deficiencies in his

claims.

## <u>CONCLUSION</u>

For the reasons stated above, the Opinion and subsequent Judgment granting

Defendants' Motion to Dismiss should be reversed, the complaint should be reinstated,

and the case remanded for further proceedings in due course.

Respectfully submitted,


/s/ *Michael J. Tague*
FLYNN, PALMER, TAGUE, LYKE
  & JACOBSON
402 West Church Street
Champaign, IL 61824
(217) 352-5181

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Brief of Plaintiff-Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,859 words, excluding the parts of  the brief  exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 12 point Palatino Linotype font.

*/s/ Michael J. Tague*

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

*/s/ Michael J. Tague*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2013, the Brief of Plaintiff-Appellant was

filed with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the appellate CM/ECF system.

The following participant in the case is a registered CM/ECF user and will be

served by the appellate CM/ECF system:

William James Brinkmann
THOMAS, MAMER & HAUGHEY LLP
30 E. Main Street
P.O. Box 560
Champaign, IL 61824-0560
Email: wjbrinkm@tmh-law.com


*/s/ Michael J. Tague*

# **APPENDIX**

## <u>TABLE OF CONTENTS TO APPENDIX</u>

Opinion filed 05/15/13, Doc. 11 ............................................................................... A-1

Judgment in a Civil Case, filed 05/15/13, Doc. 12 ............................................................ A-27

E-FILED
Wednesday, 15 May, 2013  11:25:43 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| **KEVIN RICHARD CARMODY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 12-CV-2249** |
| ) | |
| **BOARD OF TRUSTEES OF THE** ) | |
| **UNIVERSITY OF ILLINOIS, ILESANMI** ) | |
| **ADESIDA, SHARON REYNOLDS, JOSEPH** ) | |
| **BOHN, DEBORAH S. STONE, ELYNE COLE,** ) | |
| **MICHAEL HOGAN, and JONG-SHI PANG,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion to Dismiss Plaintiff's Complaint (#7) filed by Defendants, Board of Trustees of the University of Illinois, Ilesanmi Adesida, Sharon Reynolds, Joseph Bohn, Deborah S. Stone, Elyne Cole, Michael Hogan and Jong-Shi Pang. This court has carefully considered the Complaint (#1) filed by Plaintiff, Kevin Richard Carmody, the exhibits attached to the Complaint and the arguments of the parties. Following this careful and thorough review, Defendants' Motion to Dismiss Plaintiff's Complaint (#7) is GRANTED.

## FACTS[1]

Plaintiff worked for the University of Illinois (University) in the Department of Industrial Enterprise Systems Engineering (IESE) as an academic professional with the job

---

[1] In setting out the facts, this court has accepted the factual allegations of Plaintiff's Complaint as true, granting Plaintiff the benefit of every reasonable inference that may be drawn from those allegations. See Williamson v. Curran, ___ F. 3d ___, 2013 WL 1338038, at *1 (7th Cir. 2013. This court has also included facts contained in the exhibits Plaintiff attached to his Complaint. See Burke v. 401 N. Wabash Venture, LLC, ___ F.3d ___, 2013 WL 1442280, at *2 (7th Cir. 2013).

title of Manager of Systems Services. Plaintiff worked under a 12 month contract and held the same position for 22 years. He was employed by the University for nearly 25 years. In 2009, Plaintiff filed a lawsuit in the circuit court of Champaign County against David Goldberg, a tenured professor in the College of Engineering. Plaintiff alleged that, during the pendency of the Goldberg litigation, on or about June 8, 2010, he received unsolicited documents in his home Champaign News-Gazette box. These documents had been sent previously via e-mail or attachments thereto to and/or from Professor Deborah Thurston, a University employee. The Thurston e-mails were relevant to Plaintiff's litigation against Goldberg because they were inconsistent with affidavits Thurston provided during the Goldberg litigation.

Plaintiff delivered the e-mails to one of the attorneys representing him in the Goldberg litigation. Plaintiff's attorneys filed what they thought was an appropriate Motion which included the Thurston e-mails. Plaintiff's attorneys knew that the attorneys representing Goldberg, who had been retained for Goldberg by the University, would provide copies of the Motion and accompanying documents to University counsel and University counsel would advise Thurston and take such action as appropriate.

On June 25, 2010, Judge Leonhard, who was handling the Goldberg litigation, held a hearing and ordered that the Thurston e-mails be placed under seal pending litigation of further claims of privilege or relevance. Judge Leonhard also entered a protective order which stated that there was to be "no secondary dissemination" of the contents of the e-mails. At some point, either prior to or contrary to Judge Leonhard's order, agents or employees of the University received a copy of the Thurston e-mails.

2

A-2

On July 19, 2010, Defendant Ilesanmi Adesida, Dean of the College of Engineering, sent Plaintiff a letter which stated that it was a meeting notice.  The letter stated that the College of Engineering had been alerted to serious concerns related to improper use of and/or access to electronic communications.  The letter stated that Plaintiff was being notified that he was the subject of an investigation into these concerns.  The letter stated that the misconduct allegations were based on the following:

> It is alleged that on June 23, 2010, your attorney filed a document called "Exhibit A".  The exhibit contained some emails from or to University employee Deborah Thurston from 2005 and 2007.  The materials included attorney-client privileged communications, job related communications and personal correspondence.  You are not listed as a recipient or author of any of the email messages.  It is alleged that you attempted to use the substance of the email messages for non-University related purposes and without permission.  Furthermore, there are open questions regarding how you came to be in possession of these documents, specifically whether you obtained them through improper access.

The letter stated "[i]f substantiated, such acts of misconduct are a violation of university policy, including but not limited to the University Code of Conduct and the Policy on Appropriate Use of Computers and Network Systems at the University of Illinois at Urbana-Champaign."  The letter also stated that these were "very serious allegations that may result

3

in disciplinary action, up to and including immediate dismissal." The letter stated that a meeting had been scheduled for June 21, 2010, and that "[a]t this meeting you will have an opportunity to respond to all charges, with an understanding that University officials will determine whether it is more likely than not your actions were a violation of University policy." The letter further stated that Plaintiff was being placed on administrative leave, with pay, pending the outcome of the investigation.

According to Plaintiff's Complaint, none of the policies cited in the letter "actually contained a prohibition to an employee receiving documents from an anonymous source that had relevancy to a pending State civil litigation from delivering those documents to the attorney involved in the civil litigation and that attorney then making appropriate filings and participating in appropriate discovery proceedings."

A meeting was held on June 28, 2010, which Plaintiff's attorney, Robert Kirchner, attended.[2] Plaintiff alleged that Defendant Joseph Bohn, Labor and Employee Relations Specialist at the University, and Defendant Sharon Reynolds, Assistant Director of the University's Office of Academic Human Resources, "confirmed that they were in possession of a copy of the sealed Thurston e-mails and that they intended to question the Plaintiff about the contents and substance of the same." Kirchner advised Bohn and Reynolds, and the attorney representing the University, that he would not allow Plaintiff to violate Judge Leonhard's order. Kirchner sent a letter, dated August 3, 2010, to Rhonda Perry, Associate University Counsel, confirming that he advised her at the meeting that he would not allow

---

[2] According to the documents attached to Plaintiff's Complaint, the meeting was continued from June 21, 2010, at Plaintiff's request.

Plaintiff to violate the order "by discussing or disclosing the contents of the sealed materials." Kirchner stated that he also told her that "by insisting that he do so, University personnel would be acting in violation of the order as well." Kirchner acknowledged that Perry disagreed with this assessment.

On August 11, 2010, Perry sent a letter to Kirchner which stated that it was her understanding that Judge Leonhard "sealed the documents to prevent further dissemination of the documents by the parties and their attorneys because of the concerns with how the documents were obtained." She stated:

> The University, as the owner of both the documents and the servers and equipment from which they were most likely obtained, is now attempting to investigate and determine what happened. I do not believe it was the intent of the Judge to prevent the University from using its documents as necessary in order to determine if there has been a breach of University security and/or a breach of trust and responsibility of any University employees.

Perry stated that the University would proceed with the investigation. According to Plaintiff, his attorney took steps to have Judge Leonhard's order vacated or modified, but that did not happen until September 23, 2010.

On September 7, 2010, Bohn and Reynolds sent a letter to Charles Thompson, Assistant Dean and Director, OIS Engineering Administration, and Defendant Deborah Stone, Director of the Office of Academic Human Resources. This letter set out the findings

5

A-5

of the investigation.  The letter stated that, as Manager of Systems Services, Plaintiff

provides information technology support to IESE employees "both remotely and through

direct physical contact with employee computers."  The letter also stated that Plaintiff's

attorney filed a document called "Group Exhibit A" in the civil lawsuit against Goldberg.

The letter stated that the e-mails in "Group Exhibit A" included attorney-client privileged

communications, job related communications and personal correspondence and that "[a]ll of

the emails in 'Group Exhibit A' were either between Deborah Thurston and David Goldberg

or about David Goldberg."  The letter stated that Thurston did not provide copies of the e-

mails to Plaintiff and did not authorize anyone, including Plaintiff, to make copies, meaning

that a breach of security occurred.  The letter stated that, when Plaintiff "became aware of

the documents constituting 'Group Exhibit A', he did not immediately report the breach of

security to his supervisor."  The letter stated that as an information technology professional,

Plaintiff had "a duty to report breaches of security."  The letter also stated that Plaintiff did

not receive permission from his supervisor, Defendant Jong-Shi Pang, IESE Department

Head, or Thurston for his attorney to use the substance of the e-mail messages in his personal

litigation.  The letter stated that Plaintiff's unauthorized use of the documents "created an

unsafe environment for employees and a disruption in the workplace."  The letter

acknowledged that Plaintiff's attorney represented that Plaintiff had found the documents in

his News-Gazette box at home.  The letter concluded:

> Mr. Carmody attempted to use the substance of the email
>
> messages in "Group Exhibit A" for non-University related
>
> purposes and without permission.  Furthermore, it is more

> probable than not that Mr. Carmody obtained the documents in
> "Group Exhibit A" through improper access. In addition to
> violating policy, Mr. Carmody's misconduct violates the trust
> and confidence entrusted to him as a University Information
> Technology (IT) professional, casting significant doubt on his
> ability to perform his essential job duties.
>
> In light of our conclusions, and given the seriousness of the
> violations, we recommend Mr. Carmody's employment with the
> University be terminated effective immediately.

On September 9, 2010, Kirchner sent a letter to Perry and asked for an opportunity to respond to the "false information included in the September 7th correspondence." Kirchner also complained that a new charge of breach of security and duty owed by Plaintiff had been added for the first time.

On September 23, 2010, Plaintiff was served with a letter notifying him that his employment with the University had been terminated, effective that day. The letter was signed by Thompson and Stone and stated that the University found that Plaintiff engaged in the alleged misconduct. The letter stated:

> In particular, we find that you attempted to use the substance of
> the email messages in "Group Exhibit A" for non-University
> related purposes and without permission. It is more probable
> than not that the documents contained in "Group Exhibit A"
> were obtained from Deborah Thurston's computer.

7

A-7

Furthermore, it is more probable than not that you obtained the documents in "Group Exhibit A" through improper access. As an information technology professional, you did not immediately report the breach of security to your supervisor when you came into possession of the documents constituting "Group Exhibit A."

As you know, the protection and security of our information technology and data are of utmost concern for the University. Given your position's responsibilities to ensure that security and because of your actions, we can no longer trust you to carry out the responsibilities of your position. As such, you cannot perform the essential functions of your position.

On September 30, 2010, Plaintiff notified Defendant Elyne Cole, Associate Provost for Human Resources, that he intended to appeal the decision to terminate his employment. On October 7, 2010, Cole provided Kirchner with proposed post-termination appeal procedures. On October 12, 2010, Kirchner sent a letter to Cole setting out a lengthy list of "procedural deficiencies" in the proposed procedures, including a complaint that there was no provision for a court reporter or consent to a recording of the proceedings.

On October 21, 2010, Michael LeRoy, Professor of Law and Labor and Industrial Relations at the University, was selected by Cole to serve as hearing officer for the appeal. On October 25, 2010, Perry sent a letter to Kirchner responding to the issues raised in his October 12, 2010 letter. Perry stated it was not the practice of the University to tape record

8

A-8

internal proceedings and stated that the hearing officer would make a record of the proceedings. Perry asked Kirchner to "state the authority for the suggestion that a court reporter or a recording by the parties is required." Perry ended her letter by stating that "[n]othing in the procedures prevent you from presenting relevant testimony and evidence to the Hearing Officer for consideration as part of the record."

On the first day of actual hearings, the hearing officer denied Plaintiff's request to allow a court reporter to provide a transcript of the hearing at Plaintiff's expense and made no provisions for a record of testimony. The hearing officer also denied a motion to exclude the University's witnesses from the hearing process. In addition, the hearing officer denied Plaintiff's request for access to examine University computers.

According to the hearing officer's summary of proceedings, dated July 11, 2011, hearings were held on November 12, 2010, November 18, 2010, December 14, 2010 and December 16, 2010. The report detailed lengthy cross-examination of witnesses and many objections by Kirchner during the course of the proceedings. The report stated that the University rested its case on December 16, 2010 and, immediately after the proceedings adjourned that day, the hearing officer overheard Kirchner "belligerently threaten to sue Ms. Stone in her personal capacity, and other University employees associated with the hearing." The hearing officer recounted that he asked Kirchner if Kirchner also intended to sue the hearing officer. The hearing officer stated that "Mr. Kirchner replied that he could not say for sure but a personal lawsuit against the Hearing Officer was a possibility." The hearing officer stated that he "left the hearing room feeling intimidated by the substance and angry tone of Mr. Kirchner's implied threat to sue him." The report stated that, after this hearing,

9

Kirchner asked to postpone the next scheduled hearing date and, after many discussions regarding setting dates for further proceedings, May 18 and 19, 2011 were reserved for the continuation of the due process hearing. Part of the problem with finding dates was the limited availability of Defendant Jong-Shi Pang, who Plaintiff had asked the University to make available to testify.

On April 17, 2011, Kirchner died. The hearing officer's report stated that he contacted Plaintiff and Perry the next day to seek their input on a future course of action. Plaintiff requested the hearing officer's notes, citing the lack of a transcript and Kirchner's objection to the lack of a transcript. Perry objected to the disclosure of the hearing officer's notes, pointing out that Plaintiff was present for the entire hearing process and had the opportunity to see and observe the witnesses and take his own notes. On May 16, 2011, the hearing officer denied Plaintiff's request for his notes. On May 17, 2011, the hearing officer granted Plaintiff's request for a 60-120 day extension of time for him to secure proper legal representation. On June 22, 2011, the hearing officer sent the following e-mail to Plaintiff and Perry:

> 1. Mr. Carmody, would you please update me on whether you
> have legal representation or not, and what you foresee in this
> regard? 2. I am informing you both that I have been asked to
> interview with another university. This information is personal
> and confidential. In considering whether to make this disclosure
> or not, I know that my time with the University of Illinois might
> be drawing to a close, perhaps within 6-7 months (though the

10

A-10

outcome is far from clear).  I am making this disclosure in consideration of the time that has already passed, and the possibility that more time will be needed to complete the hearing process.

On June 26, 2011, Plaintiff replied to the hearing officer by e-mail.  Plaintiff raised numerous objections regarding the hearing process and stated that neither he nor his representative would attend the rest of the post-termination hearing.  Plaintiff said "please feel free to continue and conclude the post-termination hearing with [P]erry."  Perry submitted a written summation to the hearing officer on July 8, 2011, and Plaintiff submitted his objections to the substance of Perry's summation on July 9, 2011.  In his July 11, 2011 report, the hearing officer made the following findings:

1. The University presented substantial circumstantial evidence that Mr. Carmody breached a computer and/or computer system, however, this evidence was not clearly convincing.  The University presented no direct evidence to support this allegation.  Viewing the totality of this evidence, the University did not conclusively support this charge.

2 The University clearly and convincingly supported its charge that Mr. Carmody (a) possessed e-mails in "Tab A," (b) used e-mails in "Tab A" in connection with his private lawsuit, and (c) failed to report a breach of a University computer system after he possessed e-mails in "Tab A."

11

A-11

> 3. The University clearly and convincingly supported its
> reasoning that the "Policy on the Appropriate Use of Computers
> and Networks," and the "University Code of Conduct," apply to
> the conduct in the immediately preceding point.

The hearing officer stated that he recommended "that the University reconsider if it would take the same adverse action against Mr. Carmody in light of this report's conclusion that one of the charges had inconclusive support, but the remaining charges were clearly supported."

On August 30, 2011, Cole sent Plaintiff a letter and stated that she had reviewed the hearing officer's findings and recommendations and the record from the appeal hearing. She stated that she had specifically reviewed the hearing officer's recommendation that the University reconsider if it would take the same adverse action against Plaintiff in light of the report's conclusion that one of the charges had inconclusive support. Cole stated that, in response, she found "those charges the Hearing Officer found to be clearly supported sufficiently egregious to warrant immediate dismissal" so that Plaintiff's "dismissal stands."

PROCEDURAL HISTORY

On September 24, 2012, Plaintiff filed his Complaint (#1) in this court, with attached exhibits. In Count I, Plaintiff alleged a violation of his right to due process of law against all Defendants. Plaintiff alleged that he was deprived of a valuable property and liberty interest without due process. Plaintiff alleged various inadequacies in the pre-termination and post-termination proceedings.

In Count II, Plaintiff brought a state law pendent claim against Defendants Adesida, Hogan, Pang and the Board of Trustees. Plaintiff alleged that, on May 21, 2007, Plaintiff

12

A-12

reported to Thurston that University Professors Wildblood and Carnahan were using University resources for a private business activity.  Carnahan is Thurston's husband. Plaintiff then brought the matter to the attention of the State of Illinois Office of Executive Inspector General.  On July 1, 2010, Plaintiff was reassigned from reporting to IESE Department Head Pang and assigned to report to the College of Engineering Assistant Dean Charles Thompson.  On September 23, 2010, Plaintiff was served with a letter notifying him that his employment with the University had been terminated.  Plaintiff alleged that, on information and belief, he believes that Defendants' decision to transfer assigned reporting and the initial investigation of charges which led to his termination "was motivated in part" in retaliation for Plaintiff's reporting of private business activity, in violation of Illinois law. Plaintiff cited to provisions of the State Officials and Employees Ethics Act (Ethics Act) which prohibit any retaliatory action against a State employee because the State employee discloses a violation of law, rule or regulation.  See 5 Ill. Comp. Stat. 430/15-10.

On November 1, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint (#7) and a Memorandum of Law in Support (#8).  Defendants argued that Plaintiff's Complaint should be dismissed because: (1) Defendant Board of Trustees is immune from suit; (2) Count I fails to designate the legal capacity of Defendants Adesida, Reynolds, Bohn, Stone, Cole, Hogan and Pang; (3) the allegations of the Complaint are insufficient as to Defendants Adesida, Stone and Hogan; (4) claims for injunctive relief and damages are improperly pleaded; (5) Count I is insufficient to state a claim for a due process violation; and (6) Count II fails to state a cause of action.

On December 10, 2012, Plaintiff filed a Response to Motion to Dismiss (#10).

Plaintiff argued that his allegations are sufficient under the applicable standard to avoid dismissal.

## MOTION TO DISMISS

### STANDARD

To avoid dismissal, Plaintiff's claim must contain allegations that "state a claim to relief that is plausible on its face." Alam v. Miller Brewing Co., 709 F.3d 662, 665 (7th Cir. 2013), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing the sufficiency of a complaint under the plausibility standard, this court must accept the well-pleaded facts in the complaint as true. Alam, 709 F.3d at 665-66. However, this court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Alam, 709 F.3d at 666, quoting Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Alam, 709 F.3d at 666, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 10(c) of the Federal Rules of Civil Procedure "provides that 'written instruments' attached to a pleading become part of that pleading for all purposes." Williamson v. Curran, ___ F.3d ___, 2013 WL 1338038, at *1 (7th Cir. 2013), citing Fed R. Civ. P. 10(c). "Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and [the] complaint references and relies upon that document in asserting [his] claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." Williamson, 2013 WL 1338038, at *1. Therefore, this court may properly

14

A-14

consider the exhibits attached to the Complaint in ruling on the motion to dismiss.  See Williamson, 2013 WL 1338038, at *1.  Further, this court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material."  Burke v. 401 N. Wabash Venture, LLC, ___ F.3d ___, 2013 WL 1442280, at *2 (7th Cir. 2013), quoting Rosenblum v. Travelbyus.com Ltd., 229 F.3d 657, 661 (7th Cir. 2002).  To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit typically controls.  Forrest v. Universal Sav. Bank, F.A., 507 F.3d 540, 542 (7th Cir. 2007).  A "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."  Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005); Bambenek v. Wright, 2007 WL 2914215, at *4 (C.D. Ill. 2007).

ANALYSIS

I.  COUNT I - DUE PROCESS CLAIM[3]

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law."  Mann v. Vogel, 707 F.3d 872, 878 (7th Cir. 2013).  Plaintiff alleged in his Complaint that his employment was terminated in violation of his due process rights.  Defendants have not contested whether Plaintiff has sufficiently alleged a deprivation of a protected property or liberty interest.  Therefore, the issue is whether the deprivation occurred without due process.  See Mann, 707

---

[3]  Because this court's ruling on this issue is dispositive of Plaintiff's claims, it is not necessary for this court to address the additional reasons for dismissal argued by Defendants in their Motion to Dismiss.  See Bambenek v. Wright, 2007 WL 2914215, at *10 (C.D. Ill. 2007).

F.3d at 879.

Plaintiff has alleged that both the pre-termination and post-termination procedures were inadequate.  With respect to the pre-termination process, both the United States Supreme Court and the Seventh Circuit have held that "due process 'requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'"  Bodenstab v. County of Cook, 569 F.3d 651, 663 (7th Cir. 2009), quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  A pre-termination hearing need not be elaborate, and the formality and procedural requirements for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings.  Loudermill, 470 U.S. at 545; see also Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 536 (7th Cir. 2008).  Where "adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Michalowicz, 528 F.3d at 536-37, quoting Loudermill, 470 U.S. at 545-46.  In most cases, "a public employee with a protectable property interest in his or her job who faces for-cause termination 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" Lalvani v. Cook County, 396 F.3d 911, 915 (7th Cir. 2005), quoting Loudermill, 470 U.S. at 546.

This court agrees with Defendants that the allegations of Plaintiff's Complaint, as well as the documents attached to the Complaint, establish that the pre-termination proceedings were adequate.  Plaintiff's allegations and the documents attached to the Complaint show that

Plaintiff received written notice of the charges against him related to the "Exhibit A" documents and that a disciplinary meeting was held on June 28, 2010, prior to the termination decision. Plaintiff had been notified that "[a]t this meeting you will have an opportunity to respond to all charges, with an understanding that University officials will determine whether it is more likely than not your actions were a violation of University policy." Plaintiff's only allegation regarding this meeting was that his attorney notified Defendants that Plaintiff would not be allowed to violate Judge Leonhard's Order. Kirchner's letter stated that he would not allow Plaintiff to violate the order "by discussing or disclosing the contents of the sealed materials." This court agrees with Defendants that Plaintiff's voluntary decision not to participate at the meeting, based on Kirchner's belief that participating would violate a court order entered in a state court case (a belief disputed by the University), does not show that the pre-termination proceedings were inadequate.

In his Response to the Motion to Dismiss, Plaintiff did not argue that the pre-termination hearing was inadequate for that reason, but instead argued that "there were no pre-termination proceedings relating to the charge that he failed to properly respond to a breach of security." However, the allegations and documentation show that Plaintiff was notified that he was being investigated regarding his possession and use of the documents contained in "Exhibit A" and his termination was based upon his possession and use of these documents. The statement of the charges was "certainly sufficient to allow [Plaintiff] to defend himself." See Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794, 804 (7th Cir. 2000). In light of the fact that Plaintiff's allegations and the documents attached to the Complaint show that a full post-termination hearing was available to Plaintiff, this court

concludes that the alleged pre-termination hearing deficiencies are not valid grounds for a due process claim. See Michalowicz, 528 F.3d at 537; see also Greene v. City of Neillsville, 2009 WL 2341807, at *4 (W.D. Wis. 2009). This court therefore concludes that Plaintiff has not stated a pre-termination claim upon which relief could be granted. See Michalowicz, 528 F.3d at 537-38.

As far as the post-termination proceedings, the due process clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged." Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine whether the post-termination proceedings were adequate to provide Plaintiff with due process, this court must balance three factors: "[f]irst, the private interest that [was] affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mann, 707 F.3d at 879, quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In this case, this court must balance Plaintiff's right to his employment, with the procedures afforded him and the additional procedures he claims were necessary, in conjunction with the University's interest in the termination of an employee accused of violating University policy and an efficient, cost-effective proceeding.

Plaintiff's Complaint alleged that the post-termination proceedings were inadequate because: (1) there was no transcript of the hearing so Plaintiff was denied adequate

18

A-18

representation by counsel, or even by himself, after Kirchner's untimely death; (2) the hearing officer denied his motion to exclude University witnesses from the hearing process, thus allowing the potential for witnesses to compare and harmonize their testimony; (3) he was denied access to University computers for inspection prior to the hearing; (4) the University failed to make witnesses it had agreed to produce available for the hearing; (5) the hearing officer did not recuse himself after he thought he was intimidated and believed there was a possibility of a lawsuit against him; (6) Plaintiff was terminated based solely on charges brought for the first time post termination, charges which were not a proper basis for termination; and (7) the process was structured in such a way that there could be no meaningful impartial judicial review.

This court concludes that none of these allegations can survive a motion to dismiss. Plaintiff's allegations and the documents attached to the Complaint show that a lengthy hearing was held at which Plaintiff's counsel was allowed to engage in protracted cross-examination of the University's witnesses. This court concludes that the purported hearing deficiencies raised by Plaintiff are not constitutionally required in a termination proceeding for a public employee. See Fenje v. Feld, 301 F. Supp. 2d 781, 803 (N.D. Ill. 2005), aff'd, 398 F.3d 620 (7th Cir. 2005). Plaintiff has not cited any case law authority for his argument that a transcript or recording of the proceedings was necessary to provide due process, and this court has found none. This court concludes that the lack of a transcript did not prevent Plaintiff from obtaining new counsel to present evidence in his defense at the hearing or from presenting such evidence on his own. Instead, Plaintiff chose not to participate further in the hearing. In applying the appropriate balancing test, this court concludes that Plaintiff's

19

voluntary choice did not make the post-termination proceedings inadequate.

This court further concludes that Plaintiff cannot show that his due process rights were violated because the hearing officer did not exclude the University's witnesses from the hearing. Again, Plaintiff has provided no case law support for this allegation and this court has found none. In fact, there is no constitutional requirement that a post-termination hearing comport with rules of evidence. See Amundsen v. Chicago Park Dist., 218 F.3d 712, 717 (7th Cir. 2000); Fenje, 301 F. Supp. 2d at 803. In balancing the relevant factors, this court concludes that Plaintiff cannot show that this additional procedure was necessary for the post-termination hearing to comport with due process.

This court next concludes that Plaintiff was properly denied access to University computers. While discovery is sometimes allowed prior to post-termination proceedings, see Powers v. Richards, 2006 WL 1749611, at *5 (C.D. Ill. 2006), aff'd 549 F.3d 505 (7th Cir. 2008), this court concludes that it cannot be a violation of due process for an employer to refuse access to its computers to an employee accused of improperly obtaining e-mails containing privileged information. In addition, Plaintiff's own documents show that his allegation that the University failed to make witnesses available is meritless. The documentation provided by Plaintiff conclusively shows that the University rested its case on December 16, 2010. The hearing officer's report recounted the difficulty the parties were having in setting dates for the continuation of the proceedings, in part because of the limited availability of Pang, one of the witnesses Plaintiff wanted the University to make available. In fact, because Kirchner died and Plaintiff decided not to participate in further proceedings, no further hearings were held and Plaintiff never presented his case before the hearing

officer.  Therefore, the University never had the opportunity to make witnesses available for Plaintiff to call.  Based upon these facts, Plaintiff cannot state a plausible claim based upon the University's alleged failure to make witnesses available.

Plaintiff's allegation that the hearing officer should have recused himself after he was threatened with a lawsuit by Kirchner requires little consideration.  This court concludes, without hesitation, that Plaintiff cannot plausibly claim a denial of due process based upon his own attorney's conduct at the hearing.  This court additionally notes that the documentation Plaintiff has provided shows that the hearing officer continued to work with Kirchner in attempting to set dates for the continuation of the hearing and, after Kirchner's death, allowed Plaintiff a lengthy continuance in order to seek new representation.  This court concludes that Plaintiff's allegations cannot overcome the presumption that the hearing officer was a man of honesty and integrity, capable of judging fairly.  See Amundsen, 218 F.3d at 716.

This court also concludes that the hearing officer properly considered whether Plaintiff's termination was warranted based upon his possession of the e-mails in "Exhibit A" and could properly conclude that the evidence showed that Plaintiff failed to report a breach of a University computer system after he came into possession of the e-mails.  This court concludes that, because the charges against Plaintiff always included a charge of improper possession and use of the e-mails, the charge of failure to report a breach of security based upon possession of the e-mails did not add a new or unrelated charge.  Finally, this court has already found that the lack of a transcript did not violate Plaintiff's due process rights so Plaintiff's allegation that the process was structured in such a way that there could

21

A-21

be no meaningful impartial judicial review, based upon the lack of a transcript, does not survive a motion to dismiss.

This court agrees with Defendants that Plaintiff's own allegations and exhibits establish that he was given the opportunity to present his case and have its merits fairly judged. See Logan, 455 U.S. at 433. Based upon the documents attached to the Complaint, it is clear that Plaintiff had pre-termination and post-termination proceedings which complied with the requirements of due process. Accordingly, Plaintiff did not adequately plead a violation of due process rights and Count I of his Complaint must be dismissed. See Mann, 707 F.3d at 875.

## II.  COUNT II - ETHICS ACT CLAIM

Defendants argued that Count II should be dismissed against all Defendants as the allegations in the Complaint establish that the required elements of an action under the Ethics Act cannot be met. Section 15-20 of the Ethics Act provides:

> A violation of this Article may be established only upon a finding that (i) the State employee engaged in conduct described in Section 15-10 and (ii) that conduct was a contributing factor in the retaliatory action alleged by the State employee. It is not a violation, however, if it is demonstrated by clear and convincing evidence that the officer, member, other State employee, or State agency would have taken the same unfavorable personnel action in the absence of that conduct.

5 Ill. Comp. Stat. 430/15-20 (West 2012). Defendants pointed out that Plaintiff alleged that

22

A-22

he reported the private business activity on May 21, 2007. Plaintiff was not terminated from his job until September 23, 2010. Defendants asserted that the gap of over three years between the alleged protected conduct and the adverse job action is fatal to his claim.

In his Response, Plaintiff stated that Defendants were arguing that "animus created during the whistle-blowing in 2007 could not possibly be a motivating factor in getting even three years later." Plaintiff argued that Defendants' argument "ignores the fact that the aftermath of the investigations following the 2007 whistle-blowing would last for a considerable time, thus providing a motivation for Defendants to be upset for some time after 2007." Plaintiff argued that a trier of fact could conclude that someone who wishes to get even could "patiently wait[] for an opening."

This court concludes that Plaintiff has not stated a claim to relief under the Ethics Act "that is plausible on its face." See Alam, 709 F.3d at 665. Setting aside the fact that Plaintiff did not allege any reason why the named Defendants would harbor any animus against Plaintiff for his report (Plaintiff only alleged that one subject of his report, Carnahan, is married to Thurston, who is not a defendant), this court concludes that it is not plausible that Defendants waited three years for Plaintiff to violate University policy so they could "get" him for his report of private business activity. A lengthy period of time between a plaintiff's protected expression and the adverse action "discounts the causal connection between the two events." Samuelson v. Durkee/French/Airwick, 976 F.2d 1111, 1115 (7th Cir. 1992). "As the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy." Lalvani v. Cook County, Ill., 269 F.3d 785, 790 (7th Cir. 2001). The more than three year time span is

23

A-23

"well beyond the time that would allow a reasonable jury to conclude that his termination was causally related" to his 2007 report of private business activity. See Lalvani, 269 F.3d at 790-91 (noting that time periods of four months, five months and one year had been found to negate a causal inference); see also Hoppe v. Lewis Univ., 692 F.3d 833, 842 (7th Cir. 2012) (no causal connection where plaintiff engaged in protected activity two-and-one-half years prior to adverse employment action); Kidwell v. Eisenhauer, 679 F.3d 957, 966-67 (7th Cir. 2012) (adverse employment action must fall "close on the heels" of protected activity to give rise to an inference of causation); Haywood v. Lucent Techs., Inc., 323 F.3d 524, 532 (7th Cir. 2003) (one year period too long for a fact-finder to infer that termination causally related to protected conduct). Further, Plaintiff's argument that Defendants may have been patiently waiting for more than three years for an opportunity to punish Plaintiff does not support an argument that Plaintiff has stated a plausible claim. See Haywood, 323 F.3d at 532 ("pure speculation" that the defendant was lying in wait for the opportunity to punish the plaintiff "provides nothing to establish causation").

Plaintiff has relied on Benjamin v. Ill. Dep't of Fin. & Prof'l Regulation, 688 F. Supp. 2d 796 (N.D. Ill. 2010). Benjamin is not helpful to Plaintiff, however. In that case, the court found that the plaintiff had sufficiently pled that one of the defendants violated the Ethics Act by participating in retaliatory acts towards the plaintiff. Benjamin, 688 F. Supp. 2d at 804. However, in Benjamin, the plaintiff alleged that he started making complaints in 2006 and then made numerous complaints in 2008, including providing information to the Federal Bureau of Investigation throughout July 2008. Benjamin, 688 F. Supp. 2d at 799-800. The plaintiff alleged that, in retaliation for his conduct, his employment was terminated on

24

August 5, 2008. <u>Benjamin</u>, 688 F. Supp. 2d at 800.  In <u>Benjamin</u>, therefore, the alleged

retaliation occurred "close on the heels" of significant protected conduct by the plaintiff.

Therefore, <u>Benjamin</u> does not provide any support for Plaintiff's argument that he has stated

a plausible claim based upon allegations that he made a report in 2007 and the alleged

retaliatory actions occurred more than three years later in 2010.

## III.  CONCLUSION

For the reasons stated, this court concludes that Plaintiff's Complaint must be

dismissed for failure to state a claim upon which relief can be granted.  This court notes that,

at the end of his Response (#10), Plaintiff stated that he would request leave to file an

Amended Complaint "if the Court feels that a cause of action could be stated based upon a

more complete articulation of factual context."  The court concludes, however, that any

amendment to Plaintiff's Complaint would be futile.  Plaintiff cannot change the documents

which he attached to the Complaint, which show that the procedures in place were sufficient

to provide Plaintiff an opportunity to be heard and prevent an erroneous deprivation of a

protected property or liberty interest.  Plaintiff also cannot change the fact that his alleged

protected conduct occurred more than three years before the alleged retaliatory conduct.

Accordingly, Plaintiff's request for leave to file an Amended Complaint is DENIED.

 IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Dismiss (#7) is GRANTED.  Plaintiff's Complaint (#1) is

dismissed.  Because any amendment to Plaintiff's Complaint would be futile, Plaintiff's

request for leave to file an Amended Complaint is DENIED.

(2) This case is terminated.

25

A-25

ENTERED this 15th day of May, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE

A-26

E-FILED
Wednesday, 15 May, 2013 11:44:48 AM
Clerk, U.S. District Court, ILCD

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT

for the
Central District of Illinois

| | | |
|---|---|---|
| **KEVIN RICHARD CARMODY** | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case Number:  **12-2249** |
| | ) | |
| | ) | |
| **Board of Trustees of the University of** | ) | |
| **Illinois, Ilesamni Adesida, Sharon** | ) | |
| **Reynolds, Joseph Bohn, Deborah S. Stone,** | ) | |
| **Elyne Cole, Michael Hogan,** | ) | |
| **and Jong-Shi Pang** | ) | |

## JUDGMENT  IN A CIVIL CASE

 **DECISION BY THE COURT**.  This action came  before the Court.  The issues have been
heard and a decision has been rendered.

 **IT IS ORDERED AND ADJUDGED** that this case is dismissed.

**Dated:**  5/15/13

                    s/ Kenneth A. Wells
                    Kenneth A. Wells
                    Clerk, U.S. District Court